1  PAUL W. REIDL (SBN 155221)
   Law Office of Paul W. Reidl
2  285 Troon Way
   Half Moon Bay, CA 94019
3  Telephone: (650) 560-8530
   Email: paul@reidllaw.com
4
   *Attorney for JaM Cellars, Inc*
5

6                    UNITED STATES DISTRICT COURT

7                    NORTHERN DISTRICT OF CALIFORNIA

8

9  **JAM CELLARS, INC.,**                | Case No.

10      Plaintiff,                        | **COMPLAINT FOR:**

11      v.                                | **(1) TRADEMARK INFRINGEMENT**
                                          | **(2) FALSE DESIGNATION OF ORIGIN**
12 **VINTAGE WINE ESTATES, INC.,**        | **(3) UNFAIR COMPETITION**
                                          | **(4) RESTITUTION FOR UNJUST**
13      Defendant.                        |     **ENRICHMENT**
                                          | **(5) FALSE ADVERTISING**
14
                                          | **DEMAND FOR JURY TRIAL**
15

16
        JaM Cellars, Inc. hereby alleges as follows on information and belief:
17
                                   **JURISDICTION**
18
        1.      This is an action for infringement of a Federally registered trademark under the Lanham
19
   Act, 15 U.S.C. § 1051 *et seq.*, false association under the Lanham Act, infringement of an unregistered
20
   mark under the Lanham Act, common law trademark infringement, unfair competition, restitution for
21
   unjust enrichment, and false advertising.
22
        2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338 (a), and
23
   15 U.S.C. § 1121, and supplemental jurisdiction pursuant to 28 U.S.C. §§1338 (b) and 1367 (b).  Acts
24

                                            Page 1

1 giving rise to the claims asserted herein have been expressly aimed at, have occurred in, and will continue to occur in California and this District.

## VENUE

3. Venue properly lies within this District pursuant to 28 U.S.C. § 1391.

## INTRADISTRICT ASSIGNMENT

4. Pursuant to Civil Local Rule 3-2(c) this is an intellectual property matter which is to be assigned on a district-wide basis.

## THE PARTIES

5. JaM Cellars, Inc. ("JaM") is a California corporation with its principal place of business at 1500 Third Street, Napa California 94559. It is in the business of making and selling table wine.

6. Defendant Vintage Wine Estates, Inc. ("Vintage") is a California corporation with its principal place of business at 205 Concourse Boulevard, Santa Rosa, California 95403. It is in the business of making and selling table wine. Among other things, it designs and creates "private labels" for customers, including chain retailers. A "private label" is a brand that is created exclusively for a single retailer and that can be purchased only at that retailer's premises (in States such as California where having an exclusive retail outlet is lawful.)

## NATURE OF THE CASE

7. JaM owns the BUTTER trademark for wine. This case raises claims of trademark infringement, false association, unfair competition, restitution for unjust enrichment, and false advertising based on Vintage's adoption of a BUTTER BOMB and a BUTTER KNIFE trademark for wine.

## ALLEGATIONS COMMON TO ALL CLAIMS

8. JaM is the owner of the trademark BUTTER for wine as well as the owner of United States Trademark Registration No. 3,999,253 for BUTTER for wine in International Class 33. This

1  registration was issued on July 19, 2011 with constructive use rights dating back to April 11, 2010 (the
2  "BUTTER Mark").  JaM has used the BUTTER Mark on and in connection with wine since as early as
3  2010.  This use was long prior to the acts of Vintage complained of herein.  This registration is
4  incontestable under 15 U.S.C. § 1065.

5   9. JaM's BUTTER Mark for wine is not descriptive when used in association with wine
6  and is therefore inherently distinctive.

7   10. JaM uses its BUTTER Mark on and in connection with California Chardonnay table
8  wine. Wine bearing the BUTTER Mark is offered for sale in forty-eight (48) states, including the state
9  of California.  Since, 2010, JaM has sold over six million (6,000,000) bottles of wine bearing the
10  BUTTER Mark in the United States.  In 2016 alone, JaM sold over three million (3,000,000) bottles of
11  wine bearing the BUTTER Mark.

12   11. Since 2010, JaM's dollar sales of wine bearing the BUTTER Mark have exceeded fifty-
13  three million dollars ($53,000,000).  In 2016, JaM's sales of wine bearing the BUTTER Mark exceeded
14  twenty-six million dollars ($26,000,000).

15   12. In 2016, JaM produced over ten million (10,000,000) bottles of wine bearing the
16  BUTTER Mark with a retail value of over one hundred fifty million dollars ($150,000,000).

17   13. According to Nielsen U.S. Food/Drug/Liquor 52-week report ending December 2016,
18  JaM's wine bearing the BUTTER Mark is the #2 selling Chardonnay wine in the $15-20-dollar price
19  range, the #3 selling Chardonnay wine in the over $10-dollar price range, and the #7 selling Chardonnay
20  wine overall in the United States.

21   14. Since 2010, JaM has spent well over two million dollars ($2,000,000) advertising and
22  marketing its wine bearing the BUTTER Mark.  This includes direct marketing, promotions,
23  sponsorships, wine tastings, catalog and print advertisements, website production and point of sale
24  materials.

COMPLAINT
DEMAND FOR JURY TRIAL

15. In 2015 and 2016, JaM was a primary sponsor of the BottleRock Napa Valley music festival where wine bearing the BUTTER Mark was prominently featured and seen, collectively, by over two hundred thousand (200,000) festival attendees.

16. Wine bearing the BUTTER Mark received an 87-point score in the *Wine Spectator* for its 2011 vintage, was awarded a silver medal at the 2016 San Francisco Chronicle International Wine Competition and received a #1 ranking from wine professionals in the Judgment of Oakland at the 2016 Oakland Wine Festival. JaM's BUTTER wine was named an Impact Hot Brand for 2016 by the trade publication Impact and Market Watch.

17. As evidenced by JaM's sales and accolades for wine bearing the BUTTER Mark, JaM owns extremely valuable goodwill in its BUTTER Mark and the mark has extraordinary financial value.

18. As a result of the widespread, continuous advertising and distribution of wine bearing the BUTTER Mark since as early as 2010, the BUTTER Mark has also acquired distinctiveness among wine consumers. It has become highly distinctive of JaM's wine and well-known among consumers. The BUTTER trademark is a strong trademark that is entitled to the broadest scope of protection.

19. In 2016, Vintage and a large national chain retailer, Kroger, decided to trade on the goodwill of JaM's BUTTER wine. They developed two wine brands, BUTTER BOMB and BUTTER KNIFE. These labels were intended to be private labels for Kroger. The marks would be used on California Chardonnay wine made and bottled by Vintage. On information and belief, the wines were to be priced lower than JaM's BUTTER wine and were intended to trade on the goodwill of JaM's BUTTER Mark by misleading consumers into buying the lower-priced BUTTER BOMB and BUTTER KNIFE wines, thereby diverting sales from the BUTTER brand.

20. On June 15, 2016, Vintage filed an application to register BUTTER BOMB as a trademark. In that application, its attorney swore under oath to the following:

COMPLAINT
DEMAND FOR JURY TRIAL

1  "The signatory believes that to the best of the signatory's knowledge and belief, no
2  other persons, except, if applicable, concurrent users, have the right to use the mark in
3  commerce, either in the identical form or in such near resemblance as to be likely,
4  when used on or in connection with the goods/services of such other persons, to cause
5  confusion or mistake, or to deceive. The signatory being warned that willful false
6  statements and the like are punishable by fine or imprisonment, or both, under 18
7  U.S.C. § 1001, and that such willful false statements and the like may jeopardize the
8  validity of the application or any registration resulting therefrom, declares that all
9  statements made of his/her own knowledge are true and all statements made on
10 information and belief are believed to be true."

11  21.  On information and belief, at the time the application was filed Vintage was aware of
12 JaM's BUTTER Mark and its use on California Chardonnay.

13  22.  On June 15, 2016, Vintage filed an application to register BUTTERKNIFE WINES as
14 a trademark. In that application, its attorney swore under oath to the following:

15  "The signatory believes that to the best of the signatory's knowledge and belief, no
16 other persons, except, if applicable, concurrent users, have the right to use the mark in
17 commerce, either in the identical form or in such near resemblance as to be likely,
18 when used on or in connection with the goods/services of such other persons, to cause
19 confusion or mistake, or to deceive. The signatory being warned that willful false
20 statements and the like are punishable by fine or imprisonment, or both, under 18
21 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the
22 validity of the application or any registration resulting therefrom, declares that all
23 statements made of his/her own knowledge are true and all statements made on
24 information and belief are believed to be true."

COMPLAINT
DEMAND FOR JURY TRIAL

23. On information and belief, at the time the application was filed Vintage was aware of JaM's BUTTER Mark and its use on California Chardonnay.

24. JaM became aware of the BUTTER BOMB and BUTTERKNIFE WINES applications in July 2016. On August 1, 2016, JaM's counsel notified Vintage of JaM's objection to the use of the term BUTTER as part of their trademarks. He requested a response in two weeks. Vintage never responded to the letter.

25. On December 13, 2016, Vintage through an affiliated company filed an application for a Federal Certificate of Label Approval ("COLA") for a BUTTER BOMB wine. Vintage sought approval of a BUTTER BOMB label for a California Chardonnay. The wine was to be bottled in Hopland, California. Approval was granted on December 20, 2016. The issuance of a COLA is a legal prerequisite for the release of a wine into U.S. commerce.

26. JaM learned of the Certificate of Label Approval several weeks later. On December 29, 2016, JaM's counsel again wrote Vintage about the BUTTER BOMB trademark and again demanded that Vintage abandon its plan to use it. Vintage did not respond to that letter.

27. Shortly thereafter, JaM learned that the BUTTER BOMB mark was to be a private label for Kroger, which also sells JaM's wines. On January 19, 2016, JaM's counsel again wrote to Vintage and demanded that Vintage abandon its plans to use the mark. Vintage's counsel responded by stating that she was discussing the matter with her client. JaM never received a substantive response.

28. On January 19, 2017, Vintage through an affiliated company filed an application for a Federal Certificate of Label Approval for a BUTTER KNIFE wine. Vintage sought approval of a BUTTER KNIFE label for a California Chardonnay. The wine was to be bottled in Hopland, California. Approval was granted on February 3, 2017. The issuance of a COLA is a legal prerequisite for the release of a wine into U.S. commerce.

//

1  29. The approved BUTTER KNIFE label contains a materially different mark than the applied-for BUTTERKNIFE WINES trademark. The applied-for trademark was BUTTERKNIFE WINES. The approved label drops the word "wines" and splits "Butterknife" into two words. This deliberately emphasizes the BUTTER portion of the mark which is identical to JaM's valuable trademark.

30. JaM has been told that Kroger's merchandizing plan for its BUTTER BOMB wine is to place it directly adjacent to JaM's BUTTER wine.

31. In adopting the BUTTER BOMB and BUTTER KNIFE trademarks and engaging in these activities, Vintage deliberately and intentionally targeted JaM's business, its BUTTER brand and its goodwill. Vintage was on statutory and actual notice of JaM's BUTTER trademark before it adopted the BUTTER BOMB and BUTTER KNIFE marks. Instead of respecting JaM's rights by adopting another name, Vintage doubled down on its scheme. Thus, it deliberately targeted JaM and its valuable trademark by appropriating the trademark and its goodwill with full knowledge that JaM owned the trademark rights to BUTTER for wine and that it was of great value to JaM because the trademark has a tremendous amount of consumer goodwill attached to it. Vintage did this with the intention of free-riding on the brand recognition, goodwill, investment and success of JaM's brand. The whole point of Vintage's conduct is to confuse consumers who are acting on impulse to think that they are purchasing a lower-priced version of JaM's BUTTER wine when, in fact, they are not, and to compete unfairly with JaM by causing great harm, injury, and damage to JaM and its valuable brand in the process. The harm and damage will only increase over time as Vintage expands its distribution throughout Kroger stores nationwide.

32. On information and belief, Vintage has used the BUTTER BOMB and BUTTER KNIFE marks in commerce or such use is imminent. This has been confirmed by Kroger.

//

COMPLAINT
DEMAND FOR JURY TRIAL

33. The adoption and/or use by Vintage of the BUTTER BOMB and BUTTER KNIFE marks in commerce is subsequent to JaM's adoption, use and registration of its BUTTER Mark.

34. The BUTTER BOMB and BUTTER KNIFE marks are confusingly similar to JaM's BUTTER Mark. The marks are similar in sight and sound. They make the same overall commercial impression. They start with the same dominant term "BUTTER." The labels utilize the same color combination on the labeling (e.g. yellow and black). The labels are used on the identical goods, namely, Chardonnay wine produced from California grapes. On information and belief, the wines are bottled in the same type of bottle.

35. The BUTTER BOMB, BUTTER KNIFE and BUTTER marks will be sold in the same channels of trade to the same general class of consumers. The wines will be sold in the same Kroger stores.

36. Use of the BUTTER BOMB and BUTTER KNIFE marks by Vintage is likely to confuse consumers into believing that its wine is affiliated with, associated with, connected to, or sponsored by JaM and its popular BUTTER wine, and Vintage will unjustly benefit from such association. Consumers who purchase wine on-line will find BUTTER BOMB and BUTTER KNIFE wines in their search for BUTTER wines and will inevitably believe that these wines are affiliated with, associated with, connected to, or sponsored by JaM and its popular BUTTER wine, and Vintage will unjustly benefit from such association.

37. The infringing use of the BUTTER BOMB and BUTTER KNIFE marks will unjustly increase the profitability of these brands to the detriment of JaM and at no cost to Vintage.

38. JaM will be further harmed as consumers will purchase the BUTTER BOMB and BUTTER KNIFE wines believing them to be the BUTTER wine or to be affiliated with, associated with, connected to, or sponsored by JaM and thereby forego purchase of the BUTTER wine, resulting in loss of sales to JaM from Vintage's unfair competition.

COMPLAINT
DEMAND FOR JURY TRIAL

39. The infringing use of the confusingly similar BUTTER BOMB and BUTTER KNIFE marks will financially harm JaM by diminishing the value of its BUTTER Mark.

40. Vintage's use of the BUTTER BOMB and BUTTER KNIFE marks will also diminish the value of JaM's BUTTER Mark and endanger the ability of JaM's BUTTER Mark to serve as a unique and distinctive source indicator for JaM and its wines.

41. JaM has no adequate remedy at law. Unless restrained by this Court, Vintage will unfairly compete with JaM by using the BUTTER BOMB and BUTTER KNIFE marks.

42. This case is an exceptional case entitling JaM to treble damages and attorneys' fees. Vintage's conduct further entitles JaM to punitive damages.

## CLAIM ONE

**(Infringement of a Federally Registered Trademark, 15 U.S.C. § 1114)**

43. The allegations of Paragraphs 1-42 of this Complaint are hereby incorporated by reference.

44. JaM began using its BUTTER trademark before Vintage began using the BUTTER BOMB and BUTTER KNIFE trademarks. JaM has priority.

45. Vintage adopted the BUTTER BOMB and BUTTER KNIFE trademarks in connection with their wines without authorization from JaM. The trademarks are highly similar to JaM's registered BUTTER trademark. The trademarks are used on identical goods, California Chardonnay wine. In the normal course of trade the wine would be sold and promoted to the same consumers in the same channels of trade. They will be sold in the same Kroger stores where they will be merchandized side-by-side. Consumers who see Vintage's trademarks are likely to believe mistakenly that the wines originate with, are licensed by or are otherwise associated or affiliated with JaM, or to believe that it is simply a lower-priced version of JaM's wine. Alternatively, the massive distribution of Vintage's wine in Kroger may lead to the destruction of the goodwill in JaM's trademark, causing consumers to believe

mistakenly that JaM's wine originates with, is licensed by or is otherwise associated or affiliated with Vintage, or that JaM's wine is simply a higher priced version of Vintage's wine.  This unauthorized use of JaM's trademark by Vintage creates a likelihood of confusion and constitutes an infringement of JaM's trademark under 15 U.S.C. §§ 1051 *et seq.*

46. JaM has been and will be injured by Vintage's use and promotion of its trademarks. The use of a highly similar mark on identical goods will undermine if not destroy the goodwill in JaM's trademark and cause damage and injury to it. It will harm JaM's business reputation and goodwill and decrease its business and profits.

47. Vintage's' infringing conduct is willful, intentional and in bad faith.  It was aware of JaM's registered trademark prior to adopting its trademarks and therefore had an opportunity to change its marks prior to the launch of their wine.  It was warned on multiple occasions not to adopt the marks. While it did change the BUTTERKNIFE WINES mark, it did so in a manner that emphasized the term "BUTTER."  Notwithstanding this knowledge and opportunity, Vintage made a conscious decision to proceed with their scheme to appropriate the goodwill in JaM's trademark.

**WHEREFORE**, JaM prays for relief as set forth below.

## CLAIM TWO

### (False Designation of Origin, 15 U.S.C. § 1125)

48. The allegations of Paragraphs 1-47 of this Complaint are hereby incorporated by reference.

49. The trademark BUTTER points uniquely to JaM, and no one else has used it for wine. JaM began using this term for wine in the United States and California long prior to Vintage's use on and in connection with identical goods.

//

//

1  50. The aforementioned acts are likely to confuse consumers into mistakenly believing
2  that the wine provided by Vintage originates with JaM.  This constitutes a false designation of origin
3  under 15 U.S.C. § 1125.

4  51. These acts are willful and deliberate.

5  52. As a direct consequence of these unlawful acts and practices, JaM has suffered, and will
6  continue to suffer, damage to its business, reputation and goodwill, for which it is entitled to relief
7  under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

8  **WHEREFORE,** JaM prays for relief as set forth below.

## CLAIM THREE

### (Common Law Trademark Infringement)

11  53. The allegations of Paragraphs 1-52 of this Complaint are hereby incorporated by
12  reference.

13  54. Continuously since 2010, JaM has used the BUTTER trademark to identify its wine
14  and to distinguish it from those offered by others, by, among other things, prominently displaying the
15  trademark on its labels and web site.  The trademark BUTTER points uniquely to JaM, and no one
16  else has used it for wine.  JaM began using this term for wine in the United States and California long
17  prior to Vintage's use on and in connection with wine.

18  55. This use of JaM's trademark has included use with distributors, retailers and
19  consumers doing business across state lines.

20  56. As a result of the sales and advertising by JaM under the BUTTER mark, it has come
21  to indicate wine that originates only with JaM.  Vintage's use of highly similar marks on identical
22  goods in the same channels of trade is likely to cause confusion with consumers.

23  57. Vintage's sale of wine bearing the BUTTER BOMB and BUTTER KNIFE mark
24  infringes JaM's common law BUTTER trademark for wine.

COMPLAINT
DEMAND FOR JURY TRIAL

58. Vintage's infringement of JaM's common law BUTTER trademark mark has been knowing, wilful and intentional, and done without any authorization or permission from JaM and with full knowledge and awareness of JaM's established rights.

**WHEREFORE,** JaM prays for relief as set forth below.

## CLAIM FOUR

### (California Unfair Competition, B & P § 17200)

59. The allegations of Paragraphs 1-58 of this Complaint are hereby incorporated by reference.

60. The conduct of Vintage as alleged above constitutes unfair, unlawful, and fraudulent business practices in violation of California Business & Professions Code §17200 *et seq*.

61. As a direct and proximate result of the unfair and illegal conduct and representations to consumers and the public by Vintage, as herein alleged, JaM has suffered direct injury and damage because sales have been and will be diverted to Vintage, in an amount which has not yet ascertained, because consumers mistakenly believe that Vintage's wine originates with JaM or is a "bargain" version of JaM's wine. These wrongful acts have proximately caused and/or will continue to cause JaM substantial injury, including confusion in the marketplace, wrongful association, injury to its reputation, direct economic loss, and diminution in value of its trademark. These actions are causing imminent irreparable harm and injury to JaM and will cause it substantial economic injury and harm.

62. As a result of Vintage's wrongful conduct, JaM is entitled to recover from Vintage the gains, profits, and advantages it has obtained as a result of its wrongful acts as hereinabove alleged and said amounts should be disgorged and restitution made to JaM.

**WHEREFORE,** JaM prays for relief as set forth below.

//

//

1  **CLAIM FIVE**

2  **(Restitution Based On Unjust Enrichment)**

3  63.     The allegations of Paragraphs 1-62 of this Complaint are hereby incorporated by reference.

4  64.     As a result of Vintage's conduct, it has been unjustly enriched at the expense of JaM and the law thereby implies a contract by which Vintage must pay to JaM the amount by which, in equity and good conscience, it has been unjustly enriched at the expense of JaM.

**WHEREFORE,** JaM prays for relief as set forth below.

**CLAIM SIX**

**(False or Misleading Statements under Cal. Bus. & Prof. Code §17500)**

65.     The allegations of Paragraphs 1-64 of this Complaint are hereby incorporated by reference.

66.     The above-averred actions of Vintage constitute the dissemination and making of untrue or misleading statements, which by the exercise of reasonable care should have been known to be false or misleading, in violation of Cal. Bus. & Prof. Code §17500.

**PRAYER FOR RELIEF**

**WHEREFORE,** JaM demands judgment against Vintage as follows:

1.  An injunction against Vintage enjoining any further infringement of JaM's trademark, further acts of unfair competition and false association; and

2.  An award of damages in an amount to be determined at trial; and

3.  An enhancement of the trademark infringement damages award for willful and deliberate conduct as permitted by the Lanham Act; and

4.  Costs of suit, including JaM's reasonable attorneys' fees as permitted by the Lanham Act; and

COMPLAINT
DEMAND FOR JURY TRIAL

1       5.     An order of remedial advertising as this Court deems just as permitted by the Lanham Act; and

     6.     An order requiring Vintage to recall all infringing wine currently in the market; and

     7.     That JaM be awarded punitive damages as a result of Vintage's conduct; and

     8.     Such further relief as this Court deems just.

Respectfully Submitted,

**LAW OFFICE OF PAUL W. REIDL**

By: /s/ Paul W. Reidl

PAUL W. REIDL (SBN 155221)
Law Office of Paul W. Reidl
285 Troon Way
Half Moon Bay, CA 94019
Telephone: (650) 560-8530
Email: paul@reidllaw.com

Dated: March 6, 2017

*Attorney for JaM Cellars, Inc.*

**DEMAND FOR JURY TRIAL**

JaM hereby requests a trial by jury in this matter.

**LAW OFFICE OF PAUL W. REIDL**

By: /s/ Paul W. Reidl

PAUL W. REIDL (SBN 155221)
Law Office of Paul W. Reidl
285 Troon Way
Half Moon Bay, CA 94019
Telephone: (650) 560-8530
Email: paul@reidllaw.com

Dated: March 6, 2017.

*Attorney for JaM Cellars, Inc.*

COMPLAINT
DEMAND FOR JURY TRIAL